# Exhibit A



KATHY HOCHUL
*Governor*

AMANDA LEFTON
*Commissioner*

November 7, 2025

<u>VIA EMAIL</u>

Joseph Dean
Permitting Manager
Transco Gas Pipe Line Company, LLC
2800 Post Oak Blvd
Houston, TX 77056
joseph.dean@williams.com

Re:     **NYSDEC Permits**
Northeast Supply Enhancement Project
Lower New York Bay and Raritan Bay, Queens and Richmond Counties
DEC ID: 2-9902-00109/00007, 2-9902-00109/00009, 2-9902-00109/00010

Dear Joseph Dean:

On May 30, 2025, Transco Gas Pipe Line Company, LLC (Applicant or Transco) submitted to the New York State Department of Environmental Conservation (NYSDEC) a Joint Application for Permits[1] seeking a federal Clean Water Act (CWA) Section 401[2] Water Quality Certification and Protection of Waters (Excavation and Fill) Permit pursuant to Environmental Conservation Law (ECL) Article 15 for the proposed Northeast Supply Enhancement Project (Project). NYSDEC also received an application for a State Pollutant Discharge Elimination System (SPDES) permit on June 11, 2025.

As was discussed with Williams, NYSDEC previously denied a Section 401 Water Quality Certificate for the Project on May 15, 2020, based on Transco's inability to demonstrate the Project's compliance with all applicable water quality standards (the 2020 Denial). NYSDEC subjects all permit applications to a rigorous review process based on current available information, and following a comprehensive evaluation of this Application, NYSDEC has determined that the Project can comply with applicable water quality standards upon appropriate conditions. Accordingly, enclosed please find the final Section 401 Water Quality Certification and Article 15 Excavation and Fill permit for the Project. This consolidated permit, hereinafter referred to as the WQC, is effective November 7, 2025, and will expire November 6, 2035. The SPDES permit is effective on

---

[1] This submission also included an application for an Incidental Take Permit pursuant to 6 NYCRR Part 182, which Transco subsequently withdrew on June 24, 2025.
[2] 33 U.S.C. § 1341.

1

December 1, 2025, and will expire November 30, 2030. These permits are valid only for the Authorized Activities, as defined in each respective permit and expressly authorized therein. Work beyond the scope of these permits and the approved associated documents is a violation of the law and may be subject to appropriate enforcement action.

## Project Description

The Project consists of a 26-inch diameter pipeline that would transport natural gas from Pennsylvania through New Jersey, travelling underwater in Raritan Bay and Lower New York Bay to approximately three (3) miles offshore of the Rockaway Peninsula in the borough of Queens. Approximately 23.5 miles of underwater pipeline will be installed, of which approximately 17.4 miles would be in New York State waters. The Project would connect to the existing Rockaway Delivery Lateral in Queens and would provide 400,000 dekatherms per day of incremental capacity to National Grid to serve customers in Brooklyn, Queens, and Long Island.

## Summary of Permit Requirements[3]

The WQC requires the pipeline to be installed at a minimum depth of four (4) feet below the sea floor through a combination of jet trenching, clamshell dredging, and horizontal directional drilling. While NYSDEC previously determined in the 2020 Denial that a six (6) foot burial depth is generally required for in-water utilities, upon further consideration NYSDEC now determines a burial depth of four (4) feet is approvable. The basis for this determination is such a depth further minimizes total suspended sediment, as well as the absence along the Project route of (i) electromagnetic fields associated with high voltage transmission cables and (ii) seafloor areas heavily fished by bottom-tending fishing gear.

The WQC sets forth various mandatory construction work windows to avoid and minimize impacts to aquatic species, including: (i) Atlantic and shortnose sturgeon, (ii) winter flounder, and (iii) critical hard clam areas. With respect to both sturgeon species and winter flounder, Transco will be permitted to conduct construction activities outside these work windows subject to certain requirements, such as the implementation of qualified environmental monitors, and the implementation of monitoring and minimization plans that will be subject to NYSDEC approval. Due to the sensitive nature of the hard clam area located between mile points (MP) 14 and 20, the WQC implements a strict unconditional prohibition from June 1 to July 31 of each calendar year (the Time of Year Restriction), when the hard clam population is most vulnerable. Accordingly, no sediment disturbing activities will be permitted between MPs 14 and 20 during the Time of Year Restriction.

The WQC requires mitigation for all unavoidable water quality impacts, including those to sturgeon, winter flounder, and hard clams. Based on a review of the record, NYSDEC provides the following current mitigation cost estimates based upon the

---

[3] These permits only apply to New York State waters.

maximum impact to each given resource, as set forth in the Application and associated record:

- $13.5 million for sturgeon mitigation[4]
- $5 million for winter flounder[5]
- $5 million for hard clams[6]

The actual cost of mitigation may change due to a variety of circumstances, including but not limited to: (i) a change in impact, including but not limited to unanticipated construction timeline changes or the use of concrete mattressing; (ii) availability of acceptable mitigation projects; and/or (iii) actual costs at the time mitigation is implemented. The applicable mitigation plans must be approved by NYSDEC prior to commencement of any Authorized Activities.

Using applicable guidance and available data, NYSDEC has identified appropriate mixing zones along the Project route, which are set forth in detail in the WQC. Since the time of the 2020 Denial, considerable in-water utility construction has occurred in New York waters, which has provided NYSDEC with new information relating to in-water construction-related water quality impacts and measures to appropriately avoid and minimize such impacts. Accordingly, Transco is required to develop a Dredge Management Plan, which will be subject to NYSDEC approval and must include detailed adaptive management techniques should any actual or imminent exceedance of total suspended sediments occur, as consistent with recent in-water construction activity requirements for other utility projects.

If additional time is needed to complete the Authorized Activities, a written request may be submitted with an explanation of why additional time is needed and how much additional time is requested. Please refer to the General Conditions listed in the WQC for specific instructions. Transco is required to obtain any other federal, state, or local permits or approvals that may be required for the Authorized Activities.

## Transco's Right to a Hearing

Be advised, and notwithstanding requirements of the federal Natural Gas Act, the New York State Uniform Procedures Act and implementing regulations at 6 NYCRR Part 621 provide that an applicant may request an adjudicatory hearing to contest any permit conditions. Any such request must be made in writing within 30 calendar days of the date

---

[4] This estimate is based on construction activities occurring in eight (8) months outside the applicable work window for sturgeon.
[5] This estimate is based on construction activities occurring in two (2) months outside the applicable work window for winter flounder.
[6] This estimate is based on the direct impacts from construction along the route. In the 2020 Denial, NYSDEC previously relied upon Transco's hard clam density estimate of approximately 69.6 individuals per square foot. Transco subsequently identified calculation errors in its estimate and provided an updated estimate of 3.7 individuals per square foot. Before concurrence, NYSDEC required submittal of documentation supporting this updated estimate, including the underlying raw data and the related FERC filings. Following review, NYSDEC concurs with the updated estimate of 3.7 individuals per square foot.

3

of this transmittal and must be addressed to the Chief Permit Administrator at the letterhead address. A copy must also be sent to the Chief Administrative Law Judge, addressed to Chief Administrative Law Judge, NYSDEC, Office of Hearings and Mediation Services, 625 Broadway, 1st Floor, Albany, NY 12233-1550.

## Compliance with Other State Laws

Section 7(2) of the New York State Climate Leadership and Community Protection Act (Climate Act) requires NYSDEC, when issuing permits, licenses, and other administrative approvals or decisions, to determine whether such actions would be inconsistent or interfere with the attainment of the statewide greenhouse gas (GHG) emission limits established in Article 75 of the ECL. Pursuant to Section 7(2) of the Climate Act, if NYSDEC determines that a permit, license, or other administrative approval or decision is inconsistent or will interfere with attainment of the statewide GHG emission limits, NYSDEC must provide a detailed statement of justification as to why the statewide GHG emission limits may not be met and identify potential alternatives or GHG mitigation measures. Pursuant to Section 11 of the Climate Act, the Climate Act does not relieve NYSDEC or other public agencies of compliance with other applicable federal laws or regulations.

The Federal Energy Regulatory Commission (FERC) has exclusive jurisdiction over the Project under the federal Natural Gas Act, except as otherwise provided by applicable federal laws and regulations. As set forth in FERC's Final Environmental Impact Statement (FEIS) for the Project:

> FERC encourages cooperation between Transco and state and local authorities; however, state and local agencies, through the application of state and local laws, may not prohibit or unreasonably delay the construction or operation of facilities approved by FERC. Any state or local permits issued with respect to jurisdictional facilities must be consistent with the conditions of any authorization issued by FERC.[7]

NYSDEC has nonetheless conducted an analysis of the Project under Section 7(2) of the Climate Act. NYSDEC has determined that the Project is inconsistent with the attainment of the statewide GHG emission limits established in Article 75 of the ECL because it will result in emissions that would increase atmospheric concentration of GHGs and contribute to future climate change impacts.[8] New York State Public Service Commission (PSC)[9] and FERC[10], have also each determined a reliability need for the

---

[7] FEIS at 1-16.
[8] Correspondence from Transco to NYSDEC, dated June 12, 2025, in which Transco sets forth its consistency analysis under Section 7(2) of the Climate Act; FEIS at 4-390 ("emissions from construction and operation of the [NESE] Project would increase the atmospheric concentration of GHGs . . . and contribute incrementally to future climate change impacts").
[9] Order Regarding National Grid's Long-Term Natural Gas Plan in Case No. 24-G-0248, issued by the PSC on September 18, 2025 (the PSC Order).
[10] Certificate of Public Convenience and Necessity for the NESE Project, reissued by FERC on August 28, 2025.

4

Project. Accordingly, based on these PSC and FERC findings NYSDEC has determined that this Project, although inconsistent with the statewide GHG emission limits, is justified for purposes of Section 7(2) of the Climate Act.[11]

In considering alternatives, NYSDEC has relied on the PSC Order and the FEIS issued by FERC. The relevant alternatives consist of a no-action alternative and system alternatives. Neither the PSC Order nor the FEIS identify a reasonable alternative to the Project that would meet the purpose of the proposed action.

Notwithstanding that FERC's FEIS encourages cooperation between Transco and state authorities with respect to compliance with state laws, and that Transco has stated in its Application that it "will work with NYSDEC to evaluate feasible and appropriate [GHG] mitigation,"[12] Transco has elected to decline to proffer a plan for identification, evaluation, and selection of projects and/or programs for GHG mitigation. In accordance with Section 11 of the Climate Act and applicable federal authorities at 40 C.F.R. § 121.3 and 88 F.R. 66601, NYSDEC cannot legally impose GHG mitigation requirements as a condition to the WQC, which can only include conditions related to water quality.

If you have any questions, please contact me at karen.gaidasz@dec.ny.gov or Cheryl Sandrow at cheryl.sandrow@dec.ny.gov.

Sincerely,

Karen M. Gaidasz, Director
Bureau of Energy Project Management
Division of Environmental Permits

Enclosures:    WQC and Article 15 Permits
               SPDES Permit
               Responsiveness Summary

---

[11] A comprehensive statement of justification is a part of the record and available upon request. As this analysis is, however, outside of the scope of the permits before NYSDEC, this statement of justification is not appended to the enclosed permits.
[12] Correspondence from Transco to NYSDEC, dated June 12, 2025, in which Transco sets forth its consistency analysis under Section 7(2) of the Climate Act.

ecc:   Transco – Tim Powell
       Transco – Stephen Kellogg
       Transco – Dan Merz
       WSP – Steve Macleod
       WSP – Sara Mochrie
       Barclay Damon – Yvonne Hennesey
       USACE – Christopher Minck
       DOS – Rebecca Ferres
       DOS – Laura McLean
       OGS – Ralph Hill
       NYSDEC Review Team

# Exhibit B



**NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION**
**Facility DEC ID 2-9902-00109**

# PERMIT
## Under the Environmental Conservation Law (ECL)

| Permittee and Facility Information |
|---|

**Permit Issued to:**
Transcontinental Gas Pipe Line Company LLC
2800 Post Oak Blvd Level 17
Houston, TX 77056
(281) 433-8046

**Facility:**
Northeast Supply Enhancement Project
Raritan Bay (Queens and Richmond County)
Multiple, NY

**Facility Location:** Lower New York Bay and Raritan Bay, Queens and Richmond Counties, NY
**Facility Principal Reference Point:**     NYTM-E:  580.541    NYTM-N: 4486.134
Latitude: 40°31'19.3"  Longitude: 74°02'57.0"

**Authorized Activity:** Construction, installation, and operation of the proposed Williams/Transco Northeast Supply Enhancement (NESE) pipeline project. The NESE pipeline would transport gas from Pennsylvania through New Jersey, traveling underwater in Raritan Bay and Lower New York Bay to Rockaway, in Richmond and Queens Counties. This includes approximately 23.5 miles of underwater 26-inch diameter pipeline, of which approximately 17.4 miles would be in New York State waters. The NESE pipeline project would connect to the existing Rockaway Delivery Lateral in Queens and would provide natural gas to National Grid to serve customers in Brooklyn, Queens, and Long Island.

The NESE Project would be installed a minimum of four (4) feet below the sea floor through a combination of jet trenching, clamshell dredging, backfilling, horizontal directional drilling, and pile driving.

| Permit Authorizations |
|---|

**Excavation & Fill in Navigable Waters – ECL Article 15, Title 5**
Permit ID 2-9902-00109/00007
New Permit                    Effective Date: <u>11/7/2025</u>          Expiration Date:  <u>11/6/2035</u>

**Water Quality Certification – Under Section 401 – Clean Water Act, ECL Article 15**
Permit ID 2-9902-00109/00009
New Permit                    Effective Date: <u>11/7/2025</u>          Expiration Date:  <u>11/6/2035</u>



## NYSDEC Approval

**By accepting this Permit, the Permittee agrees that the New York State Department of Environmental Conservation's (NYSDEC) approval is contingent on compliance with the ECL, all applicable regulations and all permit conditions.**

Permit Administrator:    Karen M. Gaidasz, Deputy Chief Permit Administrator
Address:    NYSDEC Headquarters
    625 Broadway
    Albany, NY 12233

Authorized Signature: *Karen M. Gaidasz*     Date: 11/07/2025

## Permit Components

Water Quality Certification
Permit Conditions
General Conditions Applicable to All Permits
Notification of Other Permittee Obligations

## Water Quality Certification

NYSDEC hereby certifies that the Authorized Activity, as conditioned pursuant to this Certificate, complies with effluent limitations and standards under Sections 301, 302, 303, 306 and 307 of the Clean Water Act of 1977 (PL 95-217) and criteria of state statutory and regulatory requirements set forth in 6 NYCRR Section 608.9(a). The Authorized Activity, as conditioned, will also comply with applicable New York State water quality standards, including but not limited to effluent limitations, best usages and thermal discharge criteria, as applicable, as set forth in 6 NYCRR Parts 701, 702, 703, and 704.

## Permit Conditions

### Project Plans

1. **Conformance with Plans**
   All activities authorized by this permit must be in strict conformance with the approved plans submitted by the applicant or applicant's agent as part of the permit application. Such approved plans were prepared by WSP USA Inc., as further described in Condition #2, Approved Plans. *6 NYCRR 608*.

2. **Approved Plans**
   Table 1 details the list of approved plans as originally received by Transcontinental Gas Pipe Line Company, LLC on May 30, 2025, prepared by WSP USA Inc., with subsequent revisions.



**Table 1: Submitted Application Documents and Plans**

| Received Date | Title Appendices/Attachments | |
|---|---|---|
| May 30, 2025 | Joint Permit Application for 401 Clean Water Act Water Quality Certification and Article 15 Protection of Waters Permit | |
| | Appendix E | New York City Waterfront Revitalization Program Coastal Assessment Form |
| | Appendix F | Coastal Zone Consistency Assessment New York and New Jersey |
| | Appendix I | Construction Plans |
| July 17, 2025 | Responses to Request for Additional Information | |
| | Shapefiles | |
| July 28, 2025 | Appendix A – Drawings Final | |
| July 30, 2025 | Joint Permit Application Front Matter Updated | |
| July 22, 2025 | CEII Drawings - Adjusted | |

3. **Document and Plan Discrepancies**
   If there is a discrepancy in documents and plans, the most recent document or plan takes precedence. If there is a discrepancy between these documents and any permit condition, the permit conditions take precedence.

4. **Revised, Modified, or New Plans**
   The Permittee must notify NYSDEC of material alterations to any Authorized Activity at least one (1) week prior to starting that Activity. Revised, modified or new plans must be submitted to NYSDEC within two (2) weeks of plan issuance. NYSDEC reserves the right to modify permit conditions upon review of revised, modified, or new plans.

## Notifications and Postings

5. **Notifications and Submissions to NYSDEC**
   All notifications and submissions required by this Permit shall be provided to NYSDEC by email at DEPEnergy@dec.ny.gov.

6. **Notification of Commencement and Completion of Authorized Activities**
   At least forty-eight (48) hours prior to commencement or completion of any Authorized Activities, notification shall be made to NYSDEC. *6 NYCRR Part 701.*

7. **Notification to Mariners**
   The Permittee shall provide notification to mariners at least forty-eight (48) hours prior to commencing Authorized Activities via the U.S. Coast Guard's Local Notice to Mariners and electronically on the Permittee's website or via email lists, as appropriate. *6 NYCRR 701.*

8. **Notification to Commercial Harvesters**
   The Permittee shall provide notification to NYSDEC marine district licensed commercial harvesters via U.S. mail at least two (2) weeks prior to commencing the Authorized Activities. *6 NYCRR Part 701.*



9.  **Notification to Blue Claw Crab Harvesters**
    The Permittee must notify commercial crab harvesters at least thirty (30) days prior to commencing any Authorized Activities within blue claw crab harvest areas between December 1st to April 30th. The 30-day notification is to provide commercial crab harvesters time to harvest and remove gear from the construction area. A request must be made to NYSDEC to obtain information needed to notify commercial crab harvesters. Commercial crab harvesters must be notified that crabs may not be taken by dredging in the waters of Richmond County during any time of the year. *6 NYCRR 701.*

10. **Notification of Compensation Claims**
    The Permittee shall notify NYSDEC any time a fisheries gear compensation claim is filed and/or settled. The notification must include the claim type, species impacted, and the fishing activity disrupted and/or displaced. Such notification shall be made within thirty (30) days of resolution or decision in accordance with the Fisheries Compensation Plan required in Condition #25(d). *6 NYCRR Part 701.*

11. **Provide Project Status Reports Every Two Weeks**
    During construction phases involving work authorized by this permit, the Permittee shall provide project status reports to NYSDEC. The Project Status Reports shall include a description of the work undertaken during the preceding two-week period; representative photographs; and summary of any noncompliance. *6 NYCRR 608, 6 NYCRR 701, 702, 703, 704.*

12. **Mariners Communication Plan**
    In accordance with Appendix A, the Permittee shall provide NYSDEC, prior to the commencement of Authorized Activities, a Mariners Communication Plan for NYSDEC review and approval. This Plan shall include procedures to notify mariners, which include NYSDEC-Licensed Fishermen and Recreational Fishermen, notices e.g., notification to commencement of work, regular updates which include status and location of work, and procedures for regular consultation with mariners. *6 NYCRR 701.*

13. **Fisheries Liaison**
    For the duration of the Authorized Activities, the Permittee shall retain a Fisheries Liaison for the purposes of outreach about the Authorized Activities to NYSDEC-Licensed Fishermen and Recreational Fishermen who are known or anticipated to operate within the vicinity of the Authorized Activities. The Fisheries Liaison shall assume all the responsibilities as detailed in the Approved Mariners Communication Plan as required in Condition #12. *6 NYCRR Part 701.*

14. **Submission Deadlines**
    Where this permit requires the submission of plans or notifications by a specific date, such date will be specified in Appendix A to this permit. The Permittee shall not deviate from the requirements of Appendix A, unless there is written approval from NYSDEC.



## Construction Requirements

15. **Pipeline Burial Depth**
The Permittee shall install the pipeline to a minimum burial depth ("Burial Depth") of four (4) feet (measured from top of pipeline) below the existing seabed. Should the Burial Depth not be achieved during the initial pass of the pipeline installation tool that is best suited to achieve Burial Depth, the Permittee shall perform up to two (2) additional passes with the installation tool, or other burial tool as specified within "Joint Permit Application Front Matter Updated" under the Approved Plans, unless: (a) additional passes risk causing damage to the pipeline or the installation tool or (b) due to geologic obstructions, additional passes would not increase the burial depth or risk causing pipeline exposure. Where the Permittee cannot achieve the Burial Depth after three (3) passes, the Permittee shall notify NYSDEC as soon as practicable and include in such notification any remedial actions taken or to be taken at the location of shallow burial depth. *6 NYCRR 701.*

16. **No Interference with Navigation**
There shall be no unreasonable interference with navigation by the work herein authorized. *6 NYCRR Part 701.*

## Environmental Monitor

17. **Environmental Monitor**
The Permittee shall retain an independent, third-party Environmental Monitor(s) (EM) for the duration of the Authorized Activities. More than one EM shall be deployed if there are two or more major construction operations undertaken simultaneously, such as jet plowing and clamshell dredging, such that at least one EM is assigned to each active construction area at any one time. The EM must have the authority to stop work in cases of non-compliance or imminent environmental or safety hazards. The EM must be equipped with sufficient documentation, transportation, and communication equipment to effectively monitor compliance with the provisions of this Permit. *NYCRR 701, 703.*

The duties of the EM(s) must include:

a) Being present on-site during all Authorized Activities within, above, and adjacent to New York State waters, and where activities outside of New York State may have impacts to water quality and threatened and endangered species in New York State Waters, including the start-up of each field operation and at all times during construction in waterfront areas and waterbodies.

b) Observing and inspecting all Authorized Activities.

c) Providing weekly reports to NYSDEC regarding compliance with this Permit and with the Environmental Conservation Law (ECL) and its implementing regulations.

d) Reporting non-compliance with this Permit, the ECL or implementing regulations immediately to NYSDEC, but not later than twelve (12) hours after observation.



18. **Environmental Compliance Plan**

An Environmental Compliance Plan is required to ensure the Permittee is retaining monitor(s) to facilitate maintenance of the water quality standards and compliance with this permit, to the maximum extent practicable. Prior to commencing the Authorized Activities within, above, or adjacent to NY Waters, and in accordance with Appendix A, the Permittee shall provide NYSDEC with an Environmental Compliance Plan for implementation of the Environmental Monitor requirement in Condition #17. Authorized Activities shall not commence until NYSDEC has approved the Environmental Compliance Plan. *6 NYCRR 701, 703.*

The Environmental Compliance Plan must include the following information:

    a) The EM(s) responsible for compliance with this condition, including:

        i. Names, titles, responsibilities; and

        ii. Organization structure, including specific names, duties and responsibilities.

    b) Certification confirming the independence of the EM(s) from the Permittee;

    c) The procedures established to ensure compliance with the Permit and the applicable New York State Environmental Conservation Law and implementing regulations.

    d) Environmental compliance tracking and reporting procedures, including:

        i. Checklist of matters to inspect for compliance, including specific items or locations to be inspected, the inspection method to be employed (e.g., visual, auditory, testing by instrument), and acceptability criteria to be applied by the EM(s);

        ii. Purpose and frequency of reports with a required minimum of weekly compliance reports;

        iii. Environmental compliance schedule;

        iv. Methods of, and timeframes for reporting to NYSDEC non-compliance with permit conditions and the ECL and implementing regulations and discussion of operational controls and adaptive management strategies to be implemented in accordance with the Dredge Management Plan (DMP); and

        v. QA/QC procedures for environmental compliance.

        vi. Procedure for the Permittee to notify NYSDEC, and to respond to and correct problems found by the EM(s).



## Marine Resources

19. **Seasonal Construction Windows - Sturgeon**
    The following seasonal construction windows apply to all areas where the Authorized Activities occur within New York State waters to minimize impacts to Atlantic and shortnose Sturgeon (*6 NYCRR 701, 703*):

    a) No work March 1st – June 30th and October 1st – November 30th.

    b) In the event the Permittee cannot meet the seasonal construction window in 19(a), the Permittee will be required to develop a Monitoring Plan and a Mitigation Plan in accordance with Permit Conditions #20 and #25(a).

20. **Sturgeon Acoustic Monitoring Plan**
    For the maintenance of the best usages of the waterbody, including the propagation and survival of fish, a Sturgeon Acoustic Monitoring Plan is required. Prior to the commencement of Authorized Activities and in accordance with Appendix A, the Permittee must provide NYSDEC with a Sturgeon Acoustic Monitoring Plan detailing the methodology for detecting the presence of Vemco tagged Atlantic and shortnose sturgeon during March 1-June 30 and October 1 to November 30, using a third-party monitor that is engaged in Atlantic sturgeon tagging work in the Mid-Atlantic Bight. The Acoustic Monitoring Plan must include:

    a) Procedures to demonstrate the presence of Vemco tagged Atlantic or shortnose sturgeon in real time, through continuous monitoring and frequent review of receiver data;

    b) Implementation of best management practices upon detection of sturgeon;

    c) Data to be compiled into a reports and frequency of transmittal to NYSDEC;

    d) Procedures to provide access to video footage obtained during monitoring; and

    e) The names, titles, responsibilities, training, years of relevant experience, and licensing for the third-party acoustic monitor(s) that will be responsible for compliance with this condition.

    The Sturgeon Acoustic Monitoring Plan must be approved by NYSDEC prior to the commencement of Authorized Activities within New York State waters during the seasonal construction window. *6 NYCRR Part 701, 703*.

21. **Seasonal Construction Windows – Winter Flounder**
    The following seasonal construction windows apply to all New York State waters less than twenty (20) feet to minimize the risk to spawning and egg and larval development for winter flounder (*6 NYCRR 701, 703*):

    a) No work from January 1st to May 31st from mile point (MP) 12.0 - MP 30.7 (as delineated in Figure 6-5 in "Joint Application Front Matter Updated," within the Approved Plans, Condition #2).



    b) In the event the Permittee cannot meet the seasonal construction window in 21(a), the Permittee will be required to develop a Mitigation Plan in accordance with permit Condition 25(c).

22. **Seasonal Construction Window - Hard Clam**
To minimize impacts to vulnerable life stages of hard clam, no sediment disturbing activities shall occur from June 1- July 31 within the hard clam area (MP 14 – MP 20). *6 NYCRR Part 701, 703*.

23. **Protected Species Sightings and Discoveries**
The Permittee and/or EM(s) shall utilize Protected Species Observers and shall record any sighting, discovery through acoustic monitoring or otherwise, or other occurrences of protected species at any time from within the project area. Sightings and discoveries of protected species observed alive and uninjured during Authorized Activities shall be provided in monthly Protected Species Monitoring Reports to NYSDEC for sightings in New York State waters, which shall include the following information: species; number of individuals; age and sex of individuals (if known); observation date(s) and time(s); GPS coordinates of each individual observed; behavior(s) observed; identification and contact information of the observer(s); and the nature of and distance to any project construction, operation or maintenance activity. Protected species include species protected under the Marine Mammal Protection Act and federal and state listed threatened and endangered species. *6 NYCRR 701*.

24. **Entangled, Injured, or Dead Protected Species**
If an entangled, injured, or dead protected species is encountered during the Authorized Activities, all work must immediately cease (allowing for retrieval of equipment, if necessary), and the Permittee shall notify NYSDEC immediately. Protected species include species protected under the Marine Mammal Protection Act, and federal and state listed threatened and endangered species. Authorized Activities must not recommence until NYSDEC provides authorization to do so. A report including the following information must be prepared and provided to NYSDEC within 24 hours (*6 NYCRR 701*):

    a) species identification (if known) or description of the animal; time, date, and location (latitude/longitude) of the discovery;

    b) condition of the animal (discoveries of injured or dead animals);

    c) observed behaviors of the animal, if alive;

    d) name(s) and contact information of the person(s) involved with the discovery;

    e) weather conditions at the site for the previous forty-eight (48) hours;

    f) if available, photographs or video footage of the animal; and

    g) general circumstances under which the animal was discovered (discoveries of injured or dead animals).



25. **Water Quality Mitigation**
To mitigate for impacts to water quality and maintain the best usages of the waterbody, the Permittee shall develop the following mitigation plans (*6 NYCRR 701)*:

    a) **Sturgeon Mitigation Plan**
If any Authorized Activities are determined by NYSDEC to cause or likely cause mortality, change of feeding, spawning, or migration behaviors, or habitat conversion of Atlantic or shortnose sturgeon, the Permittee shall develop a Sturgeon Mitigation Plan and Implementation Agreement demonstrating proposed mitigation measures that will result in an overall benefit to sturgeon species. The Permittee shall submit to NYSDEC for review and approval, such Sturgeon Mitigation Plan and Implementation Agreement in accordance with Appendix A, prior to the commencement of the Authorized Activities. *6 NYCRR 701*.

    b) **Hard Clam Mitigation Plan**
If any Authorized Activities are determined by NYSDEC to cause or likely cause mortality or impacts to feeding, reproduction, or recruitment of hard clams, the Permittee shall develop a Hard Clam Mitigation Plan and Implementation Agreement demonstrating proposed mitigation measures that will result in an overall benefit to hard clams in New York State. The Permittee shall submit to NYSDEC for review and approval, such Hard Clam Mitigation Plan and Implementation Agreement in accordance with Appendix A, prior to the commencement of Authorized Activities. *6 NYCRR 701*.

    c) **Flounder Mitigation Plan**
If any Authorized Activities are determined by NYSDEC to cause or likely cause mortality, change of feeding, spawning, or migration behaviors of winter flounder, the Permittee shall develop a Winter Flounder Mitigation Plan and Implementation Agreement demonstrating proposed mitigation measures that will result in an overall benefit to the species. The Permittee shall submit to NYSDEC for review and approval, such Winter Flounder Mitigation Plan and Implementation Agreement in accordance with Appendix A, prior to the commencement of the Authorized Activities. *6 NYCRR 701*.

    d) **Fisheries Compensation Plan**
In accordance with Appendix A, the Permittee shall submit a Fisheries Compensation Plan for NYSDEC review and approval, prior to the commencement of Authorized Activities. Such Plan will include a claims process for commercial fishing gear losses for the entire duration of the Authorized Activities, and for the temporary displacement or impairment of fishing following gear losses directly resulting from the Authorized Activities.

## Water Quality

26. **Precautions Against Contamination of Waters**
All necessary precautions must be taken to preclude contamination of any wetland or waterbody by suspended solids, sediments, fuels, solvents, lubricants, epoxy coatings, paints, concrete, leachate or any other environmentally deleterious materials associated with the project. *6 NYCRR 703*.



27. **No Sidecasting**

Sidecasting of dredged sediments is prohibited. *6 NYCRR 703*.

28. **Financial Assurance**

In accordance with Appendix A, a performance bond or equivalent Financial Assurance must be obtained by the Permittee for restoration and post-construction obligations, including but not limited to any mitigation required in Condition 25. In the event the Permittee does not carry out the restoration or post-construction obligations, the Commissioner can draw upon the Financial Assurance to perform the required work.

a) The terms and amount of the performance bond or equivalent Financial Assurance must be approved by NYSDEC.

b) The performance bond or Financial Assurance must be made payable to the, "Commissioner of the NYS Department of Environmental Conservation".

c) A copy of the Financial Assurance must be filed with NYSDEC at least sixty (60) days prior to commencing the Authorized Activities.

d) In the event that the financial institution proposes to terminate the Financial Assurance at any time, the Permittee must, no less than thirty (30) days prior to the effective date of such termination, provide a substitute Financial Assurance in the same amount and form, or other form acceptable to NYSDEC. If an acceptable substitute has not been provided by thirty (30) days prior to the termination date, NYSDEC may draw upon the Financial Assurance for its amount and hold the amount drawn as a cash collateral guarantee until such time as an acceptable substitute is provided. In addition, if necessary, during the time prior to the provision of Financial Assurance, NYSDEC may expend such sums as may be required in the event of the Permittee's default of its obligations regarding compliance with this permit.

e) The Permittee must maintain the required Financial Assurance in full force and effect until the mitigation and monitoring is completed and deemed successful by NYSDEC in writing. The Financial Assurance may be released upon receiving written notification by NYSDEC. The Financial Assurance must remain in effect throughout the construction and post-construction period but may be incrementally reduced at NYSDEC's discretion based on the progress of the mitigation work, removal, or alteration.



# Water Quality Monitoring

29. **Suspended Sediment and Water Quality Monitoring Plan**
In order to measure compliance with the Water Quality Standards and this Permit, a Suspended Sediment and Water Quality Monitoring Plan (SSWQMP) is required. The Permittee, in accordance with Appendix A, shall submit to NYSDEC a SSQWMP for NYSDEC review and approval, prior to the commencement of the Authorized Activities within, above, or adjacent to New York State Waters. The SSWQMP shall (*6 NYCRR 701, 703*):

    a)  Specify sample location, depth of samples, frequency of sampling, and sampling during each tidal cycle and at slack tide;

    b)  Describe how quality assurance and control of samples will be maintained;

    c)  Include an up-current transect outside the influence of the activities;

    d)  Describe procedures for background (up-current) sampling, and compliance (down-current) sampling at the edge of the applicable mixing zone around the activities;

    e)  Include daily sampling during each tidal cycle and at slack tide;

    f)  Provide that during monitored construction activities, the Permittee will perform real-time turbidity monitoring and water quality sample collection for total suspended solids and any constituents required by this permit;

    g)  Describe how the Permittee will comply with visual observation requirements for the narrative turbidity standard in 6 NYCRR § 703.2, which states, "No increase that will cause a substantial visible contrast to natural conditions."

    h)  Identify the analytical methods and detection limits that will be used to measure each parameter including laboratory turnaround time possible for dioxins/furans;

    i)  Specify that real-time data must be collected using Acoustic Doppler Current Profiler (ADCP) and Optical Backscatter Sensor (OBS) instrumentation and by collecting water samples at various depths for laboratory analysis of total suspended solids (TSS) according to the methods and method detection limits identified in the Plan;

    j)  Describe how concurrent activities will be monitored separately;

    k)  Describe planned nightwork in relation to how the Permittee will ensure compliance with this Permit prior to and during nightwork;

    l)  Specify that, if activities occur concurrently in multiple locations, each activity that may cause resuspension of bottom sediments must be monitored separately;

    m)  Describe how and where sampling will be conducted; and

    n)  Describe actions to be taken if exceedances occur.



30. **Pre-Activity Water Quality Calibration**
A pre-activity water quality calibration shall be conducted to ensure that Total Suspended Solids (TSS) will be accurately estimated in the field during water quality monitoring activities and should be described in detail in the SSWQMP.

A combination of ADCP and OBS or similar technology, shall be used to estimate TSS concentrations at the project site based on the relationship between turbidity and TSS concentrations established during pre-activity water quality calibration. TSS concentrations estimated in the field at the edge of the mixing zone shall not exceed the value established by the pre-activity water quality calibration that would be equal to the TSS limit required in Condition #33.

If there are significant variations in sediment composition throughout the project, the Permittee shall conduct pre-activity calibrations which will be representative of the TSS-turbidity curve for specific project segments. *6 NYCRR 701, 703.*

31. **Laboratory Analysis and Results (***6 NYCRR 701, 702, 703***)**

a) All water quality laboratory analyses shall be approved in 40 CFR 136 and conducted by a laboratory certified by the NYSDOH ELAP.

b) If more than one analytical method is available for a required parameter, the Permittee shall use a method with a detection limit that is sufficiently sensitive to allow a meaningful comparison to the permit limit for that parameter. If there is no sufficiently sensitive analytical method, then the Permittee shall use the method with the lowest detection limit. That detection limit will be considered to be the limit for that parameter.

c) The Permittee shall use best efforts to ensure that water quality samples are submitted to the laboratory within twenty-four (24) hours or in accordance with allowable holding times of the applicable method, whichever is shorter. All analytical analyses shall be conducted within seventy-two (72) hours of laboratory receipt with the exception of dioxin/furans. The analytical turnaround time for dioxin/furans will be established in the SSWQMP based on laboratory capabilities. The analytical results will be reviewed by the Permittee, and the results submitted to NYSDEC within one (1) day of receipt from the laboratory via email. Exceedances must be highlighted.

d) All analytical results shall be sent to NYSDEC as soon as received from the laboratory, but no longer than forty-eight (48) hours of receipt, via email to GEMS@dec.ny.gov. Exceedances must be highlighted.

e) If the level of a monitored parameter exceeds the water quality standards in Condition #33, the Permittee shall cease activities at the location where the exceedance is detected until a solution acceptable to NYSDEC is approved.

f) During implementation of corrective actions, NYSDEC may specify additional monitoring until compliance with permit levels is demonstrated. Additional samples shall be collected until NYSDEC approves resumption of routine monitoring.



32. **Water Quality Monitoring Requirements**

Where the Authorized Activities will occur in, above, or likely impact New York State waters, water quality monitoring shall be conducted daily, during each tidal cycle and at slack tide, throughout the duration of these Authorized Activities. TSS and turbidity monitoring must be conducted during the Authorized Activities and contaminant monitoring must be conducted during the Authorized Activities in areas of contaminated sediments as specified in Tables 2 and 3. *6 NYCRR 701, 703.*

The following are requirements of the Water Quality Monitoring:

   a) Real-time data must be collected using ADCP and OBS instrumentation and by collecting water samples at various depths for laboratory analysis of: total DDT, total mercury, dissolved arsenic, copper, lead, nickel, and zinc according to the methods and method detection limits identified in the SSWQMP;

   b) TSS laboratory analysis is not required if the TSS concentration is estimated during the pre-activity calibration in accordance with the approved SSWQMP;

   c) Monitoring activities must be conducted down-current of the Authorized Activities and at a background/control station up-current and out of the influence of the Authorized Activities. Turbidity measurements used to estimate TSS must be taken, and water quality samples must be collected at three depth intervals (near- surface, mid-depth, and near bottom) as defined in the SSWQMP;

   d) If activities occur concurrently in multiple locations, each activity that may cause resuspension of bottom sediments must be monitored separately; and

   In the event of exceedance of a water quality standard, the permittee shall follow the requirements in Condition #38.



## Water Quality Standards Limits

33. **Water Quality Standard and Limits for In-Water Work**
The following water quality limits in Table 2 must be achieved at the edge of the applicable mixing zone down current of the dredging operation. Where background concentrations exceed the Water Quality Standard, the limit is 30% over background at the corresponding depth, with the exception of Total Mercury, as set forth in Table 2, below and the TSS limits in New York State waters, which shall be:

    a) 100 mg/L above ambient

        i. In areas outside the hard clam area (MP 14 – MP 20);

        ii. For backfill activities where the backfill material is certified as clean and where backfilling and sediment disturbing activities do not occur concurrently; or

        iii. In the hard clam area (MP 14 – MP 20), when activities occur for a duration not to exceed ninety-six (96) consecutive hours and include a resettlement period to allow TSS to return to ambient levels.

    b) 50 mg/L

        i. In the hard clam area (MP 14 – MP 20) when activities occur for longer than a period of ninety-six (96) consecutive hours without a resettlement period.

*6 NYCRR 701, 702, 703.* When a detection limit in the SSWQMP is greater than the listed Water Quality Standard, the Water Quality Standard will be presumed to be met when analytical results demonstrate compliance with the detection limit. Monitoring for turbidity is visual only with no laboratory analysis required.

The applicable mixing zones in New York waters, as set forth in more detail in Table 2, below, are as follows:

    d) 500 ft mixing zone:

        i. Throughout the hard clam area (MP 14 – MP 20); and/or

        ii. In areas of contamination (other than the backfill activities in Condition #33(e)(ii)).

    e) 1,500 ft mixing zone:

        i. In uncontaminated areas for MP 20 – MP 35.5; and/or

        ii. For all backfill activities outside the hard clam area (MP 14 – MP 20), where backfill material is certified as clean and where backfilling and other sediment disturbing activities do not occur concurrently.



**Table 2. Water Quality Standards and Limits for In-Water Work**

| Location | Mixing Zone | Parameter | Standard | Unit | Sample Type |
|---|---|---|---|---|---|
| MP 14 – MP 15.2 | 500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| | | Total DDT[3] | $1.1 \times 10^{-5}$ | µg/L | Grab |
| | | Total PCBs[4] | 195 | ng/L | Grab |
| | | Total Mercury[5] | 50 | ng/L | Grab |
| | | Dissolved Arsenic | 63 | µg/L | Grab |
| | | Dissolved Cadmium | 7.7 | µg/L | Grab |
| | | Dissolved Copper | 5.6 | µg/L | Grab |
| | | Dissolved Lead | 8 | µg/L | Grab |
| | | Dissolved Nickel | 8.2 | µg/L | Grab |
| | | Dissolved Zinc | 66 | µg/L | Grab |
| MP 15.2 – MP 17.4 | 500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| MP 17.4 – MP 17.9 | 500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | mg/L | Visual |
| | | Total DDT[3] | $1.1 \times 10^{-5}$ | µg/L | Grab |
| | | Dioxins/Furans[6] | $6 \times 10^{-10}$ | µg/L | Grab |
| | | Total PCBs[4] | 195 | ng/L | Grab |
| | | Total Mercury[5] | 50 | ng/L | Grab |
| | | Dissolved Arsenic | 63 | µg/L | Grab |
| | | Dissolved Cadmium | 7.7 | µg/L | Grab |



| Location | Mixing Zone | Parameter | Standard | Unit | Sample Type |
|---|---|---|---|---|---|
| | | Dissolved Copper | 5.6 | µg/L | Grab |
| | | Dissolved Lead | 8 | µg/L | Grab |
| | | Dissolved Nickel | 8.2 | µg/L | Grab |
| | | Dissolved Zinc | 66 | µg/L | Grab |
| MP 17.9 – MP 20.0 | 500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| MP 20.0 – MP 24.0 | 1500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| MP 24.0 – MP 26.6 | 500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| | | Total Mercury[5] | 50 | ng/L | Grab |
| | | Dissolved Arsenic | 63 | µg/L | Grab |
| | | Dissolved Copper | 5.6 | µg/L | Grab |
| | | Dissolved Lead | 8 | µg/L | Grab |
| | | Dissolved Nickel | 8.2 | µg/L | Grab |
| | | Dissolved Zinc | 66 | µg/L | Grab |
| MP 30.3 – MP 33.0 | 1500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |



| Location | Mixing Zone | Parameter | Standard | Unit | Sample Type |
|---|---|---|---|---|---|
| MP 33.0 – MP 34.0 | 500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| | | Total Mercury[5] | 50 | ng/L | Grab |
| MP 34.0 – MP 35.5 | 1500 ft | TSS[1] | 100 or 50 (see Condition #33(a), #33(b) above)<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Meter or grab[2] |
| | | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |

**Footnotes:**
1. TSS guidance value will be used to determine compliance with the narrative water quality standard.
2. TSS will be estimated via turbidity meter readings in accordance with the pre-activity calibration. If a calibration has not been performed, grab samples must be collected and sent to a laboratory for analysis.
3. Total DDx will be calculated as the summation of p,p′-DDD, p,p′ -DDE and p,p′-DDT.
4. The Total PCBs compliance level is 195 ng/L. The water quality standard is $1 \times 10^{-3}$ ng/L.
5. The Total Mercury compliance level is 50 ng/L. The water quality standard is 0.7 ng/L.
6. Value is for the total of the chlorinated dibenzo-p-dioxins and chlorinated dibenzofurans that are listed in 6 NYCRR 703.5 as equivalents of 2,3,7,8-tetrachlorodibenzo-p-dioxin (2,3,7,8-TCDD).

34. **Water Quality Standard Limits for Dredge Return Water (Decanting)**

The following water quality limits in Table 3 must be achieved at the point of discharge for dredge return water. When a detection limit in the SSWQMP is greater than the listed Water Quality Standard, the Water Quality Standard will be presumed to be met when analytical results demonstrate compliance with the detection limit. Monitoring for turbidity is visual only with no laboratory analysis required. *6 NYCRR 701, 702, 703.*

**Table 3. Water Quality Standards and Limits for Dredge Return Water (Decanting)**

| Location | Parameter | Standard | Unit | Sample Type |
|---|---|---|---|---|
| MP 14 – MP 15.2 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| | Total DDT[2] | $1.1 \times 10^{-5}$ | µg/L | Grab |
| | Total PCBs[3] | 195 | ng/L | Grab |
| | Total Mercury[4] | 50 | ng/L | Grab |
| | Dissolved Arsenic | 63 | µg/L | Grab |



| Location | Parameter | Standard | Unit | Sample Type |
|---|---|---|---|---|
| | Dissolved Cadmium | 7.7 | µg/L | Grab |
| | Dissolved Copper | 5.6 | µg/L | Grab |
| | Dissolved Lead | 8 | µg/L | Grab |
| | Dissolved Nickel | 8.2 | µg/L | Grab |
| | Dissolved Zinc | 66 | µg/L | Grab |
| MP 15.2 – MP 17.4 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| MP 17.4 – MP 17.89 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | - | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | mg/L | Visual |
| | Total DDT[2] | $1.1 \times 10^{-5}$ | µg/L | Grab |
| | Dioxins/Furans[5] | $6 \times 10^{-10}$ | µg/L | Grab |
| | Total PCBs[3] | 195 | ng/L | Grab |
| | Total Mercury[4] | 50 | ng/L | Grab |
| | Dissolved Arsenic | 63 | µg/L | Grab |
| | Dissolved Cadmium | 7.7 | µg/L | Grab |
| | Dissolved Copper | 5.6 | µg/L | Grab |
| | Dissolved Lead | 8 | µg/L | Grab |
| | Dissolved Nickel | 8.2 | µg/L | Grab |
| | Dissolved Zinc | 66 | µg/L | Grab |
| MP 17.89 – MP 24.0 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| MP 24.0 – MP 26.6 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| | Total Mercury[4] | 50 | ng/L | Grab |
| | Dissolved Arsenic | 63 | µg/L | Grab |
| | Dissolved Copper | 5.6 | µg/L | Grab |
| | Dissolved Lead | 8 | µg/L | Grab |
| | Dissolved Nickel | 8.2 | µg/L | Grab |
| | Dissolved Zinc | 66 | µg/L | Grab |
| MP 30.3 – MP 33.0 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |



| Location | Parameter | Standard | Unit | Sample Type |
|---|---|---|---|---|
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| MP 33.0 – MP 34.0 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |
| | Total Mercury[4] | 50 | ng/L | Grab |
| MP 34.0 – MP 35.49 | TSS[1] | 200 mg/L<br><br>None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages. | mg/L | Grab |
| | Turbidity | No increase that will cause a substantial visible contrast to natural conditions. | - | Visual |

**Footnotes:**
1. TSS technology-based limit will be used to determine compliance with the narrative water quality standard.
2. Total DDx will be calculated as the summation of p,p′-DDD, p,p′ -DDE and p,p′-DDT.
3. The Total PCBs compliance level is 195 ng/L. The water quality standard is $1x10^{-3}$ ng/L.
4. The Total Mercury compliance level is 50 ng/L. The water quality standard is 0.7 ng/L.
5. Value is for the total of the chlorinated dibenzo-p-dioxins and chlorinated dibenzofurans that are listed in 6 NYCRR 703.5 as equivalents of 2,3,7,8-tetrachlorodibenzo-p-dioxin (2,3,7,8-TCDD).

35. **Water Quality Standard for Turbidity**

Visual observations of turbidity must be conducted hourly during all in-water work, during daylight hours, as described in the approved SSWQMP, to ensure compliance with the narrative water quality standard in 6 NYCRR 703.2, which states, "No increase that will cause a substantial visible contrast to natural conditions." *6 NYCRR 703*.

36. **Water Quality Standard for TSS**

TSS must be estimated in accordance with the pre-activity calibration curve or laboratory samples. Compliance with the TSS guidance value and technology-based limits will ensure compliance with the narrative water quality standard in 6 NYCRR 703.2, which states, "None from sewage, industrial wastes or other wastes that will cause deposition or impair the waters for their best usages." *6 NYCRR 703*.

37. **Night Work**

If there are exceedances from visual turbidity observations, TSS estimates, or contaminant lab results during daylight hours, the Authorized Activities shall not occur at night without approval from NYSDEC. *6 NYCRR 701*.

38. **Exceedance of Water Quality Standards**

If a permit limit for TSS or any contaminant is exceeded, or a plume is observed to have migrated beyond the edge of the applicable mixing zone, the Permittee shall immediately notify the EM and NYSDEC, and corrective action shall be implemented. A Corrective Action Plan (CAP) will be developed and provided to the EM and NYSDEC within twenty-four (24) hours of the observance of the exceedance. Based on the CAP, in consultation with the EM and NYSDEC, the in-water activities will be re-evaluated to determine the need for operational changes. During implementation of corrective actions, NYSDEC may specify additional monitoring until compliance with permit levels



is demonstrated. Collection of additional samples may be required until NYSDEC approves resumption of routine monitoring. If the implemented corrective action does not bring the activity in question into compliance, the Permittee shall cease such activity until a NYSDEC-approved solution is developed or continuation of such activity is approved in writing by NYSDEC. *6 NYCRR 701, 702, 703*.

# **Dredging**

39. **Final Dredged Materials Disposal Location**
In accordance with Appendix A, the final dredged material disposal location(s) must be submitted to NYSDEC for review and approval, at least two (2) weeks prior to the commencement of dredging. *6 NYCRR Part 701.*

40. **Dredge Management Plan**
To minimize, to the greatest extent practicable, water quality impacts and maintain best usages of the waterbody, a Dredge Management Plan (DMP) is required. In accordance with Appendix A, prior to commencement of the Authorized Activities within, above, or adjacent to New York State Waters, the Permittee must provide NYSDEC with a DMP. The DMP shall (*6 NYCRR 701, 703)*:

    a) Describe methods and equipment purpose and specifications for any proposed dredging, including details of the dredging rate, rate of advancement, and discussion of proposed controls to comply with the TSS and turbidity standards;

    b) Describe measures to ensure all equipment remains in good operating condition throughout dredging operations

    c) Describe procedures for dredge materials management and disposal;

    d) Describe procedures for complying with dredging requirements in this Permit;

    e) Describe operational controls and adaptive management options that may be implemented for potential exceedances and corrective actions scenarios;

    f) Describe procedures for handling, storage, and disposal of contaminated dredged materials.

    g) Describe procedures for dredge material dewatering or barge decant, where applicable, including:

        i. a minimum settling time of twenty-four (24) hours;

        ii. additional sampling for projects with contaminated sediments;

        iii. completed authorization request forms for water treatment chemicals, such as flocculants planned for use; and

        iv. practices that will be implemented to reduce resuspension of sediments.



41. **Dredging Operations**
    The following conditions apply to all dredging operations (*6 NYCRR 701, 703*):

    a)  Dredging equipment must be operated in a manner that minimizes re-suspension of sediments;

    b)  Dredging operations must not cause an increase in turbidity that results in a substantial visible contrast to natural conditions;

    c)  All potential acoustic impacts shall be restricted to the minimum necessary to complete the project;

    d)  Barges must be in good operating condition and be designed to contain sediments;

    e)  The use of a dragline for dredging is prohibited;

    f)  A closed environmental bucket must be used for any dredging;

    g)  The bucket must be lowered to the level of the barge gunwales prior to release of the load;

    h)  Excessive loss of water/material from the bucket must be investigated and repaired;

    i)  Bucket retrieval rates must be controlled to minimize turbidity;

    j)  Bucket decanting and loss of dredged material into the waterbody during dredging and barge loading will be controlled to minimize turbidity;

    k)  The contractor must demonstrate to the EM's satisfaction that the bucket dredge operator has sufficient control over the bucket depth and closure so that the sediment re-suspension from bucket contact with the bottom and bucket over-filling is minimized;

    l)  All dredging must be conducted to leave a uniform bottom elevation free of mounds or holes and all side slopes of the dredged area must have a maximum 1:3 slope; and

    m) No upland handling, transferring, storing, disposing or placing of dredged materials in New York State is authorized by this Permit; any such activity will require approvals from NYSDEC before dredging begins.

42. **Dewatering and Decanting**
    The following will apply if dewatering and decanting will occur (*6 NYCRR 701, 703*):

    a)  The overlying water in the barge or dewatering area may be pumped to the water column only after a minimum of twenty-four (24) hours of settling;

    b)  The Permittee shall conduct sampling and analysis of effluent prior to discharge. No chemicals(s) shall be added to aid in dewatering unless approved by NYSDEC prior to the use of the chemical(s) and discharge of the effluent;



    c) Decanting of the barge shall be conducted in a manner that precludes adding substantial suspended solids, turbidity, or sheens to the receiving waterbody. Pumping of decant water shall avoid resuspending or pumping previously settled sediment to the maximum extent practicable;

    d) Decanting and dewatering activities may not cause turbidity that results in a substantial visible contrast to the receiving waterbody. If a visual contrast is observed, pumping shall be stopped immediately, and NYSDEC will be notified. The Permittee shall conduct an evaluation of the adequacy of the holding time and/or the need to add a flocculant to aid in settling. Results of such analysis will be transmitted to NYSDEC for review and approval; and

    e) Washing of the gunwales of the scow or other vessels where dredged sediment is stored and transported will be avoided, except to the extent necessary to ensure the safety of workers.

## Dredging In Contaminated Sediments

**43. Dredging in Contaminated Sediments**

Contaminated sediment requirements apply to the following project segments: MP 14 – MP 15.2, MP 17.4 – MP 17.89, MP 24.0 – MP 26.6, and MP 33.0 – MP 34.0, as defined in Condition #33 and in accordance with the approved SSQWMP and DMP. In all areas of contaminated sediments, the Permittee shall implement the following during dredging operations (*6 NYCRR 701, 703*):

    a) A closed (i.e., sealed) environmental (clamshell) bucket with sealing gaskets or an overlapping sealed design at the jaws and seals/flaps positioned at locations of vent openings must be used to minimize sediment re-suspension at the dredging site. Seals or flaps designed or installed at the jaws and locations of venting openings must tightly cover these openings while the bucket is lifted through the water column and into the barge;

    b) The closed environmental (clamshell) bucket dredge must be equipped with sensors to ensure complete closure of the bucket before lifting through the water;

    c) Drawings and specifications of the environmental bucket must be provided to NYSDEC at least two (2) weeks prior to the anticipated start of dredging operations. Specifications must demonstrate that appropriate design considerations are incorporated into equipment selected for deployment;

    d) Spuds or anchors must be placed outside of the area of contamination;

    e) Midline buoys must be employed to minimize sediment disturbance caused by cable sweep;

    f) Washing of the gunwales of the dredge scow must be avoided except to the extent necessary to ensure the safety of workers;

    g) Barges or scows must be of solid hull construction or be sealed;



h) Deck barges shall not be employed, unless modified to allow no barge overflow; and barge overflow is prohibited.

## Jet Trencher Operations

44. **Jet Trencher Trials**
Jet trencher trials must be conducted prior to pipeline installation. A Jet Trencher Trial Plan must be integrated into the SSWQMP for NYSDEC review and approval. The following conditions apply to jet trencher trials (*6 NYCRR 701, 703*):

    a) Jet trencher operations must not proceed until NYSDEC approves the Jet Trencher Trial Plan;

    b) Continuous TSS and water quality monitoring must be conducted during jet trencher trials;

    c) During jet trencher trials, the Permittee must work cooperatively with NYSDEC to immediately review the results of the real-time data measurements during the jet trencher installation trials to evaluate whether the operating conditions result in TSS concentrations meeting the TSS threshold limit;

    d) If the jet trencher trials demonstrate that the operating conditions result in TSS concentrations exceeding the TSS limits established in this permit, the Permittee must work with NYSDEC to evaluate and implement feasible modifications to the jet trencher operating conditions to further reduce in-situ sediment re-suspension associated with the jet trencher installation procedure.

45. **Jet Trencher Operations**
The following conditions apply when jet trenching is employed (*6 NYCRR 701, 703*):

    a) The Permittee must operate the jet trencher in accordance with the operating conditions determined through jet trencher trials to minimize the suspension of in-situ sediments;

    b) Midline buoys must be employed to minimize sediment disturbance caused by cable sweep; and

    If TSS concentrations exceed the TSS limits established in this permit during the jet trencher installation of the pipeline, work must immediately cease and NYSDEC must be notified as soon as possible, but no less than twelve (12) hours. The Permittee must propose jet trencher operation mitigation measures including but not limited to: changing the rate of advancement of the jet trencher, modifying or varying hydraulic jetting pressures, or implementing other reasonable operational controls that reduce suspension of in-situ sediments. Work shall not recommence until NYSDEC approval of proposed operation mitigation measures.



# Horizontal Directional Drilling

46. **Horizontal Directional Drill**

To the extent that Horizontal Directional Drilling (HDD) operations are conducted in or may impact New York State waters, the following conditions apply (*6 NYCRR 701, 703)*:

a) While dredging to create an HDD pit there shall be no increase in turbidity that will cause a substantial visible contrast to natural conditions in New York State waters;

b) In accordance with Appendix A, prior to the commencement of HDD operations, the Permittee shall provide an Inadvertent Returns Plan which provides for the detection and correction of accidental releases of drilling fluids to NYSDEC for review and approval;

c) The Permittee must provide Safety Data Sheets (SDS) and available whole product toxicity data for all drilling fluid additives as part of the Inadvertent Returns Plan;

d) All sediments excavated during HDD pit construction must be disposed of at an approved facility and must not be sidecast, stockpiled on site, or re-introduced into New York State waters;

e) All HDD drilling fluids and cuttings must be properly managed in the confines of the HDD entry and exit pits. Release of the HDD drilling fluids or cuttings outside the confines of the HDD pit is prohibited. If there is a discharge of HDD fluid to New York State Waters, NYSDEC shall be notified within twelve (12) hours. The notification must include information about the extent of the intrusion, what remedial efforts were taken, and toxicity data and SDS for the drilling fluids;

f) Following completion of the HDD operation, the entry and exit pits must be filled to restore natural grade. The top two (2) feet of material must consist of native material. A post-installation survey of the HDD must be completed to confirm adequate cover of the HDD entry and exit pits, and must be submitted to NYSDEC within sixty (60) days of completing the HDD;

g) During the HDD operation, all drilling fluid additives utilized must be water-based; and

h) The use of a petroleum or polymer-based additive is prohibited unless there is written approval from NYSDEC.



## Restoration

47. **Restoration of Pipeline Corridor (***6 NYCRR 701, 703***)**

   a) The pipeline trench shall be backfilled to grade immediately upon completion of the installation of the pipeline.

   b) The Permittee shall acquire backfill from commercial vendors that have valid permits to dredge the Ambrose Channel. If these sources cannot supply enough material for backfilling, the Permittee may acquire backfill from upland sources.

   c) All fill shall consist of clean sand, gravel, or soil (not asphalt, slag, fly ash, broken concrete, construction, or demolition debris) and must be graded to match the elevation immediately adjacent to the fill.

## Sediment Monitoring

48. **Sediment Monitoring Plan**
   To demonstrate that the waterbody continues to support its best usages, a Sediment Monitoring Plan is required. The Permittee must submit a post-installation Sediment Monitoring Plan to NYSDEC for review and approval, in accordance with Appendix A, prior to commencing the Authorized Activities. The Sediment Monitoring Plan must provide that post-installation sampling shall commence promptly after the completion of the installation process. Specific methods, sample locations and depths, and equipment must be described to ensure representative samples of ambient sediment are adequately collected, retained and sequestered for analysis. Samples must be collected and analyzed for arsenic, copper, lead, mercury, nickel, zinc, total DDT, and total PCBs using a congener-specific method, as outlined in the USACE/EPA Regional Testing Manual for Dredged Materials. Sediment samples must be collected at stations up-current and down-current from the project route, the locations and number of samples must be outlined in the Sediment Monitoring Plan. *6 NYCRR 701, 703*.

49. **Post-Installation Sediment Monitoring Results**
   In accordance with Appendix A, the Permittee shall submit to NYSDEC, within four (4) months of completion of pipeline installation, a report which provides the analytical results, and compares them to pre-installation chemical concentrations in surficial sediments located along the approved route. Following submission of the report, NYSDEC shall, in consultation with the Permittee, determine if any further action is required. *6 NYCRR 701.*



## Benthic Community Monitoring

50. **Benthic Community Monitoring Plan**
To demonstrate that the waterbody continues to support its best usages, a Benthic Community Monitoring Plan is required. The Permittee shall submit a Benthic Community Monitoring Plan to NYSDEC for review and approval, in accordance with Appendix A, prior to the commencement of the Authorized Activities. This plan must provide for periodic benthic monitoring at locations to be determined after consultation with NYSDEC, within an area extending approximately one hundred feet (100') on either side of the dredged/jetted trench no later than eighteen (18) months after completion of installation. This plan must include results of pre-installation benthic monitoring and at least five (5) years of post-construction monitoring in the same season. This plan must also include restoration standards for years one (1), three (3) and five (5) and recommendations for remedial actions and/or additional mitigation in the event the benthic community does not restore to those restoration standards. *6 NYCRR 701.*

51. **Post-Installation Benthic Community Monitoring Results**
In accordance with Appendix A, the results of each post- installation benthic community monitoring event shall be submitted to NYSDEC within four (4) months of the completion of that monitoring event. If the benthic community is not restored in accordance with the restoration standards outlined in the Benthic Community Monitoring Plan, the Permittee shall implement remedial actions and/or additional mitigation as approved by NYSDEC. NYSDEC reserves the right to extend the post-construction monitoring beyond five (5) years if those restoration standards are not met. *6 NYCRR 701.*

## Post-Construction

52. **Post-Construction Survey**
In accordance with Appendix A, within sixty (60) days of completion of the pipeline installation and backfilling, the Permittee shall submit as-built drawings providing final elevations of the pipeline and the backfilled trench. The post-construction survey shall be conducted for the entire route and must identify any areas that may require supplemental backfill, including jet trenched segments. Plan view and profile drawings shall be provided to show the Burial Depth of the pipeline relative to the seabed. *6 NYCRR 701.*

53. **Post-Dredging Final Report**
In accordance with Appendix A, within thirty (30) days of completion of dredging operations, the Permittee shall submit to NYSDEC a report summarizing the results of dredging, water quality monitoring, and dredged material management operations. The report shall include:

   a) Location and extent of dredging;

   b) Total amount of material dredged;

   c) Ultimate placement location of dredged material;

   d) Water quality monitoring results and corrective actions taken (when needed); and

   e) Documentation of follow-up testing/observations. *6 NYCRR 701.*



54. **Post-Construction Comparison of Modeled and Actual Water Quality Monitoring Results**
Within four (4) months of the completion of pipeline installation, the Permittee shall submit to NYSDEC an analysis comparing the actual water quality monitoring results obtained during the Authorized Activities with any model predictions previously provided in support of the project application. *6 NYCRR 701.*

55. **Post-Construction Monitoring**
The entire pipeline route shall be monitored annually for five (5) years after installation activities and following a severe weather event that may have directly impacted the pipeline, to ensure that the pipeline does not pose a hazard to public safety, navigation, or marine resources. A severe weather event shall be defined as a 100-year storm event. Each annual monitoring report shall include the current pipeline burial depths throughout the buried alignment and a comparison with data from previous surveys and/or the predicted pipeline burial. Annual monitoring reports shall be submitted to NYSDEC by December 31 of each year following installation of the pipeline. Annual monitoring may be discontinued after three (3) years if NYSDEC and the Permittee mutually agree that subsequent monitoring is not necessary based on the results of the annual monitoring from the first three (3) years. Monitoring after significant storm events shall occur, if needed, throughout the permit term. *6 NYCRR 701.*

56. **Maintenance Activities and Reburial**
If, after review of any post-construction monitoring, NYSDEC identifies the need for maintenance activities or reburial of sections of the pipeline to maintain the permitted Burial Depth, the Permittee shall submit a Work Plan to NYSDEC for review and approval, prior to conducting any such maintenance activities or reburial. A permit modification may be required by NYSDEC based on the extent of the maintenance activities or reburial. *6 NYCRR 701.*

57. **Decommissioning Plan**
In consideration of potential eventual decommissioning of the pipeline, to ensure the Permittee considers all options to maintain water quality standards and best usages during such decommissioning, a Decommissioning Plan is required. In accordance with Appendix A, within one (1) year of the completion of installation, the Permittee shall submit to NYSDEC for review and approval, a Decommissioning Plan for potential removal or abandonment of the pipeline. *6 NYCRR 701.*



| General Conditions Applicable to All Permits |
|---|

1. **NYSDEC Authority**
   Nothing in this Certificate and its appendices shall limit either (a) the authority of NYSDEC to monitor the environmental and health impacts resulting from the construction and operation of the project and to enforce applicable provisions of the Environmental Conservation Law (including those which provide for summary abatement authority) and applicable implementing regulations governing the environmental and health impacts resulting from such construction and operation, or (b) any defenses to such enforcement that the Permittee may be able to assert under applicable law.

2. **State Not Liable for Damage**
   The State of New York shall in no case be liable for any damage or injury to the structure or work herein authorized which may be caused by or result from future operations undertaken by the State for the conservation or improvement of navigation, or for other purposes, and no claim or right to compensation shall accrue from any such damage.

3. **State May Require Site Restoration**
   If upon the expiration or revocation of this Permit, the project hereby authorized has not been completed, the Permittee shall, without expense to the State, and to such extent and in such time and manner as NYSDEC may lawfully require, remove all or any portion of the uncompleted structure or fill and restore the site to its former condition.  No claim shall be made against the State of New York on account of any such removal or alteration.

4. **State May Order Removal or Alteration of Work**
   If future operations by the State of New York require an alteration in the position of the structure or work herein authorized, or if, in the opinion of NYSDEC it shall cause unreasonable obstruction to the free navigation of said waters or flood flows or endanger the health, safety or welfare of the people of the State, or cause loss or destruction of the natural resources of the State, the owner may be ordered by NYSDEC to remove or alter the structural work, obstructions, or hazards caused thereby without expense to the State, and if, upon the expiration or revocation of this permit, the structure, fill, excavation, or other modification of the watercourse hereby authorized shall not be completed, the owners, shall, without expense to the State, and to such extent and in such time and manner as NYSDEC may require, remove all or any portion of the uncompleted structure or fill and restore to its former condition the navigable and flood capacity of the watercourse. No claim shall be made against the State of New York on account of any such removal or alteration.

5. **Facility Inspection by NYSDEC**
   The permitted site or facility, including relevant records, is subject to inspection at reasonable hours and intervals by an authorized representative of NYSDEC to determine Permittee's compliance with this Permit and the Environmental Conservation Law. Such representative may order work suspended pursuant to ECL 71-0301 and SAPA 401(3).

   When requested, the Permittee shall provide a person to accompany NYSDEC's representative during an inspection to the permit area.



A copy of this Permit, including all referenced maps, plans, and drawings must be available for inspection by NYSDEC at all times at the project site. Failure to provide a copy of the permit at the request of a NYSDEC representative is a violation of this Permit.

6. **Relationship of this Permit to Other NYSDEC Orders and Determinations**
Unless expressly provided for by NYSDEC, issuance of this Permit does not modify, supersede or rescind any order or determination previously issued by NYSDEC or any of the terms, conditions or requirements contained in such order or determination.

7. **Applications for Permit Reissuance, Modifications or Transfers**
The Permittee must submit a separate written application to NYSDEC for reissuance, modification or transfer of this Permit. Such application must include any forms or supplemental information NYSDEC requires. Any reissuance, modification or transfer granted by NYSDEC must be in writing. Requests for permit reissuance, modification or transfer must be submitted to:

> Chief Permit Administrator
> NYSDEC Albany Headquarters
> 625 Broadway, 4th Floor
> Albany, NY 12233

8. **Approved Plans Become Enforceable Permit Conditions**
Upon NYSDEC approval of plans required pursuant to this Permit, the terms; conditions; schedule and other requirements in final approved plan shall become an enforceable condition of this Permit.

9. **Submission of Reissuance Application**
An application for permit reissuance must be submitted no less than 30 calendar days before the permit expiration date for all the permit types.

10. **Permit Modifications, Suspensions and Revocations**
NYSDEC reserves the right to exercise all available authority to modify, suspend or revoke this Permit. The grounds for modification, suspension or revocation include:

a) Materially false or inaccurate statements in the permit application or supporting documentation.

b) Failure by the Permittee to comply with any terms or conditions of the permit.

c) Exceeding the scope of the project as described in the permit application.

d) Newly discovered material information or a material change in environmental conditions, relevant technology or applicable law or regulations since the issuance of the permit.

e) Noncompliance with previously issued permit conditions, orders of the Commissioner, any provisions of the Environmental Conservation Law or regulations of NYSDEC related to the permitted activity.



11. **Permit Transfer**
   Permits are transferrable unless specifically prohibited by statute, regulation or another permit condition. Applications for permit transfer should be submitted prior to actual transfer of ownership.

---

## Notification of Other Permittee Obligations

---

**Item A: Permittee Accepts Legal Responsibility and Agrees to Indemnification**
The Permittee, excepting state or federal agencies, expressly agrees to indemnify and hold harmless the Department of Environmental Conservation of the State of New York, its representatives, employees, and agents ("NYSDEC") for all claims, suits, actions, and damages, to the extent attributable to the Permittee's acts or omissions in connection with the Permittee's undertaking of activities in connection with, or operation and maintenance of, the facility or facilities authorized by the permit whether in compliance or not in compliance with the terms and conditions of the permit. This indemnification does not extend to any claims, suits, actions, or damages to the extent attributable to NYSDEC's own negligent or intentional acts or omissions, or to any claims, suits, or actions naming NYSDEC and arising under Article 78 of the New York Civil Practice Laws and Rules or any citizen suit or civil rights provision under federal or state laws.

**Item B: Permittee's Contractors must Comply with Permit**
The Permittee is responsible for informing its contractors, employees, agents and assigns of their responsibility to comply with this Permit, including all conditions, while acting as the Permittee's agent with respect to permitted activities. Said parties are subject to the same sanctions for violations of the Environmental Conservation Law as those prescribed for the Permittee.

**Item C: Permittee Responsible for Obtaining Other Required Permits**
The Permittee is responsible for obtaining any other permits, approvals, lands, easements and rights-of-way necessary to carry out the activities authorized by this Permit.

**Item D: No Right to Trespass or Interfere with Riparian Rights**
This Permit conveys no right to the Permittee to trespass upon the lands of or interfere with the riparian rights of others. It authorizes no impairment of any rights, title, or interest in real or personal property held or vested in a person not a party to this Permit.